1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

| | |
|---|---|
| **JESUS CIANEZ HERNANDEZ,**<br><br>                                    Petitioner,<br><br>      **v.**<br><br><br>**GREG LEWIS,**<br><br>                                    Respondent. | Case No. 1:12-cv-01661 LJO MJS (HC)<br><br>**FINDINGS AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS**<br><br><br>**[Doc. 24]** |

17

18      Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254. Petitioner is represented by Linnea M. Johnson.

20   Respondent Greg Lewis, Warden of Pelican Bay State Prison, is represented in this

21   action by David A. Eldridge, of the Office of the Attorney General for the State of

22   California.

23   **I.      BACKGROUND**

24      Petitioner is currently in the custody of the California Department of Corrections

25   pursuant to a judgment of the Superior Court of California, County of Stanislaus, upon

26   being convicted by a jury of first degree murder with special circumstances for use of a

27   firearm during the commission of the crime and that the crime was committed for

28   financial gain. (Memo. of P&A in Support of Petition ("P&A"), ECF No. 1-1 at 6.)

1

1    Petitioner was also convicted of conspiracy to commit murder for financial gain. (Id.)

2    After his conviction on January 11, 1991, on March 21, 1991, Petitioner was sentenced

3    to death with regard to the murder conviction and to life without the possibility of parole

4    for the conspiracy conviction.

5        Petitioner appealed the judgment to the California Supreme Court. On June 2,

6    2003, the California Supreme Court reversed the death sentence and remanded the

7    case to the Stanislaus County Superior Court. People v. Hernandez, 30 Cal.4th 835

8    (2003). In August 2006, upon remand, the Stanislaus County Superior Court imposed a

9    sentence of life in prison without possibility of parole on the murder conviction, 25 years

10   to life on the conspiracy conviction, three years on each of the firearm-use

11   enhancements, and monetary fines. People v. Hernandez, 2007 Cal. App. Unpub.

12   LEXIS 8324, 2, 2007 WL 2994646 (Cal. App. Oct. 16, 2007). On direct appeal, the

13   California Court of Appeal, Fifth Appellate District modified the monetary fine amount but

14   otherwise affirmed the judgment on October 16, 2007. Id.

15       While the automatic appeal was pending, Petitioner pursued collateral relief in the

16   form of petitions for writ of habeas corpus in state court. On May 31, 2002 and July 15,

17   2003, Petitioner filed petitions for writ of habeas corpus in the California Supreme Court.

18   On March 2, 2005, both petitions were denied. See Hernandez on H.C., 2005 Cal.

19   LEXIS 2350 (Cal. Mar. 2, 2005); Hernandez on H.C., 2005 Cal. LEXIS 2351 (Cal. Mar. 2,

20   2005)

21       On March 7, 2006, Petitioner filed a second supplemental petition in the California

22   Supreme Court. On May 9, 2007, the California Supreme Court issued an order to show

23   cause returnable to the Stanislaus County Superior Court, why relief should not be

24   granted. (See Pet., Ex. 278, ECF No. 1-12 at 8.) An evidentiary hearing was held on

25   February 5, 2008, and on June 4, 2008, the Superior Court denied the writ. (Pet., Exs. R-

26   S, ECF No. 1-3 at 89-195.)

27       On July 16, 2008, Petitioner filed a habeas petition in the Fifth District Court of

28   Appeal. (Mot. To Dismiss, Ex. C, ECF No. 24.) The court denied the petition on April 8,

1   2010 and issued its remittitur on May 10, 2010. (Id.) On August 6, 2010, Petitioner filed

2   petition in the California Supreme Court which was denied on October 12, 2011. (Mot. to

3   Dismiss, Ex. D.)

4       On October 10, 2012, Petitioner filed the instant federal petition for writ of habeas

5   corpus in this Court. The Court appointed Petitioner counsel and ordered Respondent to

6   file a response on November 13, 2012. (ECF Nos. 6-7.) On February 4, 2013,

7   Respondent filed a Motion to Dismiss the petition as being filed outside the one-year

8   limitations period prescribed by 28 U.S.C. § 2244(d). (Mot. to Dismiss.) Petitioner filed an

9   opposition to the motion on February 25, 2013, and Respondent filed a reply on

10  February 28, 2013. The matter stands ready for adjudication.

11  **II.    DISCUSSION**

12      **A.      Procedural Grounds for Motion to Dismiss**

13      Rule 4 of the Rules Governing Section 2254 Cases allows a district court to

14  dismiss a petition if it "plainly appears from the petition and any attached exhibits that the

15  petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing

16  Section 2254 Cases.

17      The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an

18  answer if the motion attacks the pleadings for failing to exhaust state remedies or being

19  in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418,

20  420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to

21  exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using

22  Rule 4 as procedural grounds to review motion to dismiss for state procedural default);

23  Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n. 12 (E.D. Cal. 1982) (same). Thus, a

24  respondent can file a motion to dismiss after the court orders a response, and the Court

25  should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 &

26  n. 12.

27      In this case, Respondent's motion to dismiss is based on a violation of the one-

28  year limitations period. 28 U.S.C. § 2244(d)(1). Because Respondent's motion to dismiss

1   is similar in procedural standing to a motion to dismiss for failure to exhaust state

2   remedies or for state procedural default and Respondent has not yet filed a formal

3   answer, the Court will review Respondent's motion to dismiss pursuant to its authority

4   under Rule 4.

5       **B.**    **Commencement of Limitations Period Under 28 U.S.C. § 2244(d)(1)(A)**

6       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

7   Penalty Act of 1996 (hereinafter "AEDPA").  AEDPA imposes various requirements on all

8   petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy,

9   521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th

10  Cir. 1997).

11      In this case, the petition was filed on October 10, 2012, and is subject to the

12  provisions of the AEDPA. AEDPA imposes a one-year period of limitation on petitioners

13  seeking to file a federal petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As

14  amended, § 2244, subdivision (d) reads:

15      (1)  A 1-year period of limitation shall apply to an application for a writ of
        habeas corpus by a person in custody pursuant to the judgment of a State
16      court.  The limitation period shall run from the latest of –

17          (A) the date on which the judgment became final by the conclusion
            of direct review or the expiration of the time for seeking such
18          review;

19          (B) the date on which the impediment to filing an application
            created by State action in violation of the Constitution or laws of the
20          United States is removed, if the applicant was prevented from filing
            by such State action;
21

22          (C) the date on which the constitutional right asserted was initially
            recognized by the Supreme Court, if the right has been newly
23          recognized by the Supreme Court and made retroactively
            applicable to cases on collateral review; or

24          (D) the date on which the factual predicate of the claim or claims
            presented could have been discovered through the exercise of due
25          diligence.

26      (2) The time during which a properly filed application for State post-
        conviction or other collateral review with respect to the pertinent judgment
27      or claim is pending shall not be counted toward any period of limitation
        under this subsection.
28

4

1    28 U.S.C. § 2244(d).

2         Under § 2244(d)(1)(A), the limitations period begins running on the date that the

3    petitioner's direct review became final or the date of the expiration of the time for seeking

4    such review. In this case, Petitioner filed an appeal with the California Court of Appeal,

5    Fifth Appellate District. The court dismissed the petition on October 16, 2007. The Court

6    of Appeal's decision became final the same day. See Cal. Rules of Court 8.264(b)(2)(B).

7    Petitioner did not seek review in the California Supreme Court. Accordingly, for purposes

8    of § 2244(d)(1)(A), Petitioner's judgment of conviction became final on November 26,

9    2007, upon expiration of the forty-day period within which to file and serve a petition for

10   review with the California Supreme Court. See Gonzalez v. Thaler, 132 S. Ct. 641, 653-

11   654 (2012); Cal. Rules of Court 8.387(b)(1); 8.500(e)(1). The AEDPA statute of

12   limitations began to run the following day, on November 27, 2007. Patterson v. Stewart,

13   251 F.3d 1243, 1246 (9th Cir. 2001).

14        Petitioner would have one year from November 27, 2007, absent applicable

15   tolling, in which to file his federal petition for writ of habeas corpus.  However, Petitioner

16   delayed in filing the instant petition until October 10, 2012, nearly four years after the

17   statute of limitations period expired. Absent the later commencement of the statute of

18   limitations or any applicable tolling, the instant petition is barred by the statute of

19   limitations. Petitioner has made no showing that the statute of limitations should

20   commence at a later date under § 2244(d)(1)(B)-(D). Accordingly, Petitioner may only

21   rely on tolling to attempt to show that the petition is not barred by the statute of

22   limitations.

23        **C.    Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)**

24        28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed

25   application for State post-conviction or other collateral review with respect to the

26   pertinent judgment or claim is pending shall not be counted toward" the one year

27   limitation period.  28 U.S.C. § 2244(d)(2). In Carey v. Saffold, the Supreme Court held

28   the statute of limitations is tolled where a petitioner is properly pursuing post-conviction

1   relief, and the period is tolled during the intervals between one state court's disposition of

2   a habeas petition and the filing of a habeas petition at the next level of the state court

3   system. 536 U.S. 214, 216 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th

4   Cir. 1999). Nevertheless, state petitions will only toll the one-year statute of limitations

5   under § 2244(d)(2) if the state court explicitly states that the post-conviction petition was

6   timely or was filed within a reasonable time under state law. Pace v. DiGuglielmo, 544

7   U.S. 408 (2005); Evans v. Chavis, 546 U.S. 189 (2006). Claims denied as untimely or

8   determined by the federal courts to have been untimely in state court will not satisfy the

9   requirements for statutory tolling. Id.

10      Here, the statute of limitations began to run on November 27, 2007, the date

11  Petitioner's direct appeals were considered final. As Petitioner had a habeas petition

12  currently pending at the Stanislaus County Superior Court, Respondent correctly

13  concedes that the limitations period was immediately tolled. 28 U.S.C. § 2244(d)(2).

14  Petitioner's Superior Court petition was denied on June 4, 2008. On July 16, 2008,

15  Petitioner filed a petition with the Fifth District Court of Appeal. It was denied on April 8,

16  2010. Respondent does not challenge Petitioner's right to tolling during the pendency of

17  the two petitions and during the six week interval between the filing of the petitions.

18  However, Respondent asserts that the four month interval between the denial of the

19  California Court of Appeal petition on April 8, 2010 and the filing of the California

20  Supreme Court petition on August 6, 2010 was unreasonable and not entitled to tolling.

21  Whether Petitioner is entitled to tolling during this period is the determinative factor with

22  regard to the timeliness of the federal petition and is discussed at length below.

23      Respondent concedes that Petitioner is entitled to tolling during the pendency of

24  the California Supreme Court petition. However, the limitations period continued to run

25  during the period between the denial of the California Supreme Court petition on October

26  12, 2011 and the filing of the instant petition on October 10, 2012. As 364 days of the

27  limitations period expired during this period of time, the instant petition is timely only if

28  Petitioner is entitled to tolling during the interval between his California Court of Appeal

1    and California Supreme Court petitions.

2                    **1.    Interval Tolling In California**

3        California has an unusual system of habeas review in which each level of the

4    court system has original jurisdiction, and each original habeas petition must be filed

5    within a reasonable time. Maxwell v. Roe, 628 F.3d 486, 496 (9th Cir. 2010) (citing

6    Evans v. Chavis, 546 U.S. 189, 198 (2006)); In re Sanders, 21 Cal. 4th 697, 704 (Cal.

7    1999) ("A tension is thus created between society's desire for finality of its criminal

8    judgments and its insistence the person being punished is actually guilty of the crimes of

9    which he or she was convicted. One way we attempt to resolve this tension is to require

10   collateral challenges be filed promptly, but to excuse delay on a showing of good

11   cause."). Due to the difficulty of determining the meaning of a reasonable time, the

12   United States Supreme Court suggested the Ninth Circuit Court of Appeals request

13   clarification from the California Supreme Court, which it did. The California Supreme

14   Court declined to respond.[1] "Until the California Supreme Court indicates otherwise, we

15   'operate[ ] on the assumption that California law . . . [does] not differ significantly from

16   the laws of other States, i.e., that California's 'reasonable time' standard [does] not lead

17   to filing delays substantially longer than those in States with determinate timeliness

18   rules." Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (citing Chavis, 546 U.S.

19   at 198). "The fact that California's timeliness standard is general rather than precise may

20   make it more difficult for federal courts to determine just when a review application (i.e.,

21   a filing in a higher court) comes too late." Chavis at 193 (citing Carey v. Saffold, 536 U.S.

22   214, 223 (2002)).

23       In Chavis, the Supreme Court described the approach to determining whether

24   an interval between filings should be tolled:

25       _____
26       [1] Chaffer v. Prosper, 592 F.3d 1046, 1048 n.1 (9th Cir. Cal. 2010) ("California has not provided any
         guidance as to what constitutes a timely non-capital habeas petition. See King v. LaMarque, 464 F.3d 963,
27       966 (9th Cir. 2006). The Supreme Court has suggested that the Ninth Circuit "seek guidance on the matter
         by certifying a question to the California Supreme Court in an appropriate case." Evans, 546 U.S. at 199.
28       The Ninth Circuit did so, Chaffer v. Prosper, 542 F.3d 662 (9th Cir. 2008), but the California Supreme
         Court denied certification, Chaffer v. Prosper, No. S166400, 2009 Cal. LEXIS 2693 (filed Mar. 11, 2009).).

> In the absence of (1) clear direction or explanation from the California Supreme Court about the meaning of the term "reasonable time" in the present context, or (2) clear indication that a particular request for appellate review was timely or untimely, the Circuit must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness. That is to say, without using a merits determination as an "absolute bellwether" (as to timeliness), the federal court must decide whether the filing of the request for state-court appellate review (in state collateral review proceedings) was made within what California would consider a "reasonable time." See supra, at 193, 163 L. Ed. 2d, at 691. This is what we believe we asked the Circuit to do in Saffold. This is what we believe it should have done.

Chavis, 546 U.S. at 198.

In Chavis, the Supreme Court found that petitioner's delay of over three years between filing petitions was unreasonable specifically in light of a six month period in which petitioner's failure to diligently file was unexplained and unjustified. Chavis at 201. "Six months is far longer than the 'short period[s] of time,' 30 to 60 days, that most States provide for filing an appeal to the state supreme court. Id. (citing Saffold, 536 U.S. at 219). In light of this reasoning, several Ninth Circuit cases have held that unexplained delays of more than 60 days are unreasonable. See e.g., Stancle v. Clay, 692 F.3d 948, 956 (9th Cir. 2012) (unexplained eighty-two day delay unreasonable); Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011) (unexplained eighty- and ninety-one day filing delays unreasonable); Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (101 and 115 day delays unreasonable); Banjo v. Ayers, 614 F.3d 964, 970 (9th Cir. 2010) (holding that an unexplained gap of 146 days was unreasonable).

It is clear that the Supreme Court and Ninth Circuit have held that unexplained delays of greater than thirty to sixty days are considered unreasonable and not subject to tolling. However, whether tolling applies to such delays when good cause is provided remains an open question.

In Carey v. Saffold, the Supreme Court discussed whether a 4 1/2 month delay in filing a habeas petition in the California courts was unreasonable. 536 U.S. 214, 226-227 (2002). Rather than find the 4 1/2 month delay unreasonable outright, the Supreme Court remanded the matter to the Ninth Circuit to determine if the delay was

1   unreasonable. See Chavis, 546 U.S. at 193 ("The filing was not *obviously* late, however,

2   because the delay might have been due to excusable neglect...") (emphasis in original);

3   see also Walker v. Martin, 131 S. Ct. 1120, 1125 (2011) (citing Saffold with approval in

4   describing California's indeterminate filing deadlines). The Supreme Court instructed the

5   Ninth Circuit to take into account factors including the fact that Petitioner was not notified

6   of the Court of Appeal's decision for several months, and that he filed within days after

7   receiving notification in determining the reasonableness of the delay. Saffold, 536 U.S.

8   at 226-227. Upon remand the Ninth Circuit found that the petitioner was entitled to tolling

9   for the 4 1/2 month delay. See Saffold v. Carey, 312 F.3d 1031, 1035-1036 (9th Cir.

10  2002).

11       In Maxell v. Roe, the Ninth Circuit had to determine whether an interval of over

12  fourteen months between the denial of a petitioner's petition with the California Court of

13  Appeal and the filing of a petition with the California Supreme Court was entitled to

14  tolling. 628 F.3d at 496 (9th Cir. 2010). The Ninth Circuit first considered whether the

15  California Supreme Court considered the petition timely. Id. at 497. ("Although this is not

16  a dispositive statement of consideration on the merits, and consideration on the merits

17  does not 'decide the question' of whether the petition was timely, it is a factor we

18  consider.) (citing Carey, 536 U.S. at 226 (explaining that a court may consider whether

19  the California Supreme Court considered a matter on the merits, but not take such

20  consideration as 'an absolute bellwether' on the timeliness question)).

21       The Ninth Circuit next analyzed the justifications set forth by petitioner in

22  determining whether the delay was reasonable:

23       Second, [petitioner] has offered a compelling justification for his
    delay in filing his second state petition. Under California law, a petitioner
24  must provide an explanation for any significant delay in applying for
    habeas relief. In re Clark, 855 P.2d at 738; see also Evans, 546 U.S. at
25  201 (holding that petitioner's "unexplained, hence unjustified, delay of at
    least six months" was not reasonable for purposes of California law);
26  Chaffer, 592 F.3d at 1048 (denying a petition that included a 115-day gap
    between the filing of the first two habeas petitions and 101-day gap
27  between the second and third habeas petitions in the California Supreme
    Court where the petitioner "offered no justification for the delays as
28  required under California law").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, [petitioner] had good reason for his delay in filing. This was an unusual case. The original charge was for ten counts of capital murder, and the case moved at an uncommonly slow pace due to its sheer magnitude. [Petitioner] was arrested on April 4, 1979, but his trial did not begin until four years later in January 1984. Maxwell's jury trial lasted nine months. Maxwell's direct appeal took another seven years. On direct appeal, the combined Reporter's and Clerk's Transcript, including arguments, filled nearly 20,000 pages. Following his direct appeal, Maxwell filed a habeas corpus petition in the superior court. That petition was accompanied by 179 exhibits comprising more than 1700 pages in eight volumes. That court issued an order to show cause, but denied the petition without holding an evidentiary hearing. Thereafter, [petitioner] filed a new habeas corpus petition in the California Supreme Court. It was not until twelve years after the jury returned its guilty verdict that the California Supreme Court on post-conviction review issued an order to show cause on the issue of whether jailhouse informant Sidney Storch gave false testimony. A year after that, the evidentiary hearing regarding Storch began. The evidentiary hearing spanned over two years and during that time numerous pleadings were filed, more than thirty witnesses testified, and over fifty exhibits were admitted. The record from the two-year hearing filled ten volumes and thousands of pages. In short, the evidentiary hearing in this case was astoundingly long, the record complex and voluminous, and [petitioner]'s claims were substantially affected by the Storch evidence that was discovered during the course of the hearing.

Furthermore, as [petitioner]'s counsel explained to the district court, the California Supreme Court petition raised two claims directly related to the original claims concerning the use of jailhouse informants, and these claims required her to conduct significant legal research and to rewrite the petition to incorporate evidence that had come to light during the evidentiary hearing. In particular, because [petitioner] challenged the state court's factual finding and did so on the basis of evidence presented over a two-year span, defense counsel - who was representing [petitioner] pro bono at the time - had to review all the new evidence in order to make the case that the Superior Court had erred in rejecting [petitioner]'s claim based on Storch's testimony. Aside from conducting new research and incorporating the new evidence into the habeas petition, defense counsel explained to the district court that she spent time determining which of the exhibits and "dozens and dozens of pleadings" should be submitted to the state supreme court in support of the petition. The magnitude of the task is apparent in [petitioner]'s petition to the California Supreme Court: the petition spans over 160 pages and cites to the evidentiary hearing record, the reporter's transcript, and exhibits from the evidentiary hearing over 500 times.

We have carefully considered [petitioner]'s arguments, and we agree with the district court that based on the need to review the voluminous record, to conduct legal research of complex claims, to address the Superior Court's lengthy decision, to incorporate the findings of the two-year evidentiary hearing, and to redraft the original habeas corpus petition, [petitioner]'s delay was reasonable in this case. Furthermore, one justice of the California Supreme Court dissented from the denial of [petitioner]'s petition. For all these reasons, and based on the particular circumstances in this case, we agree with the district court that [petitioner]'s delay in filing his habeas petition with the California Supreme

1
2

Court was reasonable and, therefore, that AEDPA's statute of limitations was tolled during the time between the Superior Court's decision and his second petition to the California Supreme Court. [Petitioner]'s federal habeas petition was therefore timely.

3  Maxwell, 628 F.3d at 496-497.

4  ## 2.    Reasons Proffered By Petitioner for Delay

5      Petitioner presents several reasons for any delay in filing the habeas corpus

6  petition with the California Supreme Court. Petitioner's counsel, Michael J. Hersek, State

7  Public Defender at the Office of the State Public Defender of California, included an

8  August 5, 2010 declaration dated with the petition alleging that the petition was timely

9  filed and presented without any undue delay. (Pet., Ex. CC, ECF No. 1-7 at 108-10.

10  Furthermore, in response to the motion to dismiss, Petitioner provided a six page

11  declaration from Hersek  elaborating on the reasons for the delay. (Opp'n, Ex. 1, ECF

12  No. 25-1.)

13      Hersek explained that Jay Colangelo, who had been Petitioner's counsel since

14  1994, died unexpectedly and since Hersek, as Coangelo's supervisor, had some

15  familiarity with the case, he took over the matter. Shortly after taking over the case, on

16  March 13, 2009, the state appellate court issued an order to show cause. On March 23,

17  2009, Hersek took over for Colangelo. During this time, Hersek reviewed all the

18  pleadings, read the trial record (4,500 pages), and completed his formal briefing on

19  December 18, 2009. (Opp'n, Ex. 1 at 2.) The state appellate court denied the writ on

20  April 8, 2010.

21      During the interval between habeas petitions, Hersek was responsible for the

22  administration of the two State Public Defender offices, as well as the delivery of defense

23  services in the office's 120 capital cases. Hersek was also worked with the state

24  legislature, governor's office, and state agencies to implement his administrative policies.

25  (Id.) Hersek directly managed and provided the day to day management and supervision

26  of the San Francisco branch office and was also personally responsible for two other

27  death penalty cases. (Id.)

28      Due to state budget concerns, Hersek devoted a significant portion of his time

1   addressing how the office would implement the significant budget cuts it was facing, and

2   was forced, like all state employees, to be furloughed three days per month (a 14% work

3   reduction). (Id. at 3.) Specifically with regard to efforts required to prepare the habeas

4   petition for the California Supreme Court, Hersek provided the following explanation:

> First, the size of this case cannot be overstated: Mr. Hernandez's commitment offense involved alleged conspiracy between three co-defendants, each of whom were tried separately, and two of whom received the death penalty. Because Mr. Colangelo's death was unexpected, no provisions had been made for the transition of the case to another attorney. As a result, when Mr. Colangelo died, I had to review the 4,500 page transcript of Mr. Hernandez's trial (as well as the numerous volumes of pleadings filed in the case) in order to file the traverse in the court of appeal. But in order to file Mr. Hernandez's final state petition, I had to additionally review for the first time thousands of pages of documents OSPD had collected during its habeas corpus investigation, including eight boxes of transcripts and pleadings filed in Mr. Hernandez's co-defendants' cases. This was necessary because the issues to be raised in the State Supreme Court revolved around the testimony of an informant who testified to the same matters at Mr. Hernandez's co-defendants' trials.
>
> In addition, drafting Mr. Hernandez's final state petition was particularly time consuming because the court of appeal's denial of relief varied in part from the superior court's prior reasons for doing so (including its facts findings). Along these same lines, it was necessary to conduct a substantial amount of new, additional research, particularly given that the appellate court cited numerous authorities not addressed by the parties.
>
> …
>
> From April 8, 2010, to August 6, 2010, I devoted as much time as humanly possible to the preparation of the Hernandez writ petition I filed with the California Supreme Court on August 6, 2010. I worked as quickly as possible to complete it as soon as possible. Under these very challenging circumstances, the 120 day interval between the state appellate court's denial of the writ petition, and the filing of another writ petition in California Supreme Court, was not an unreasonable amount of time within which to accomplish these tasks.

(Opp'n, Ex. 1 at 3-5.)

### 3.    Analysis

#### a.    State Court Decision

"The United States Supreme Court has clarified that when a postconviction [habeas] petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." Trigueros v. Adams, 658 F.3d 983, 988-989 (9th Cir. 2011) (citing Pace v.

1   <u>DiGuglielmo</u>, 544 U.S. 408, 414 (2005). While consideration on the merits is a "factor"

2   the Ninth Circuit considers in determining whether a California habeas petition is timely

3   filed, it is not an "absolute bellwether" of timeliness. <u>See</u> <u>Trigueros</u>, 658 F.3d at 989-90

4   (9th Cir. 2011); <u>Maxwell v. Roe</u>, 628 F.3d at 496 (citing <u>Chavis</u>, 546 U.S. at 194).

5   Accordingly, the Court "must determine timeliness when there is no clear indication by

6   the state court." <u>Maxwell v. Roe</u>, 628 F.3d at 496 (citing <u>Chavis</u>, 546 U.S. at 198).

7           Here, the California Supreme Court issued a summary denial without citation to

8   cases indicating that the Petition was untimely. <u>See</u> <u>Walker v. Martin</u>, 131 S.Ct. 1120

9   (2011) ("California courts signal that a habeas petition is denied as untimely by citing the

10  controlling decisions, i.e., <u>Clark</u> and <u>Robbins</u>.") Such a denial constitutes a decision on

11  the merits and does not preclude an untimeliness finding. Furthermore, the fact that the

12  California Supreme Court requested briefing on the merits of the claim, rather than

13  dismiss the petition as untimely, is a factor in favor of finding the petition timely. The

14  Court shall therefore determine if there was reasonable justification for the delay in filing

15  his habeas petition with the California Supreme Court.

16                          b.        <u>Justification for Delay</u>

17          While less complicated, this case presents similar issues to those presented in

18  <u>Maxwell v. Roe</u>, 628 F.3d 486. Both petitioners were convicted of capital crimes. On

19  appeal, both petitioners raised claims of the presentation of false evidence and failure to

20  disclose material evidence with regard to informant witnesses. <u>See</u> <u>Napue v. Illinois</u>, 360

21  U.S. 264, 269 (1959), <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). Evidentiary hearings

22  were held in state court in both cases, introducing new evidence that both petitioners

23  incorporated into their state petitions.

24          Here, Petitioner's counsel presented facially valid justifications for the month or

25  two delay greater than the 30 to 60 days considered presumptively reasonable.[2] The

26  ───────────────────

27          [2] Petitioner, in his opposition to the motion to dismiss, argues that the California Court of Appeal
    decision should not be considered final until thirty days after issuance under California Rule of Court, rule
    8.387(b)(1), and that the time period to consider for potential delay between the petitions is roughly 90

28  days rather than 120 days. Petitioner provides no federal support for this proposition, and further, the

                                            (continued…)

                                                13

1  case, while not as complex as that presented in <u>Maxwell v. Roe</u>, still presented

2  significant challenges. While the trial transcript was less than five-thousand pages,

3  Hersek asserts that he was required to review significantly more documents, including

4  the records of Petitioner's co-conspirators' trials and post-trial discovery in order to

5  properly prepare the petition filed with the California Supreme Court.

6       Notably, Respondent does not attempt to differentiate Petitioner's case from

7  <u>Maxwell v. Roe</u>. Despite the fact that recent Ninth Circuit authority clearly states that

8  delays may be reasonable when proper justification is provided, Respondent contends

9  that the Supreme Court has foreclosed such a possibility by the Supreme Court's

10 statement that "California's 'reasonable time standard' would not lead to filing delays

11 substantially longer than those with determinate timeliness rules." <u>Chavis</u>, 546 U.S. 189.

12 Specifically, Respondent specifically states, "Rather, unless and until 'California' revisits

13 the matter, the lower federal courts are bound to adhere to the Supreme Court's ruling

14 that California law does *not* allow intervals substantially longer than thirty to sixty days.

15 (Opp'n, ECF No. 26 at 3.) The Court finds Respondent's reasoning incomplete.

16      The Supreme Court implicitly acknowledged that delays not "substantially longer"

17 may well be reasonable. The Supreme Court has only held that "unexplained and

18 unjustified delays" are not "reasonable." <u>See</u> <u>Chavis</u>, 546 U.S. at 201 ("We have found

19 no authority suggesting, nor found any convincing reason to believe, that California

20 would consider an unjustified or unexplained 6-month filing delay 'reasonable.' Nor do

21 we see how an unexplained delay of this magnitude could fall within the scope of the

22 federal statutory word "pending" as interpreted in <u>Saffold</u>."). The Supreme Court has

23 clearly left open the possibility that a sufficiently explained and justified delay may be

24 considered reasonable. Accordingly, the issue presented here is if the 30 to 60

25 additional days longer than that acknowledged as implicitly reasonable are reasonable in

26 _____

(…continued)

27 Court finds it unnecessary to resolve such issue to determine whether Petitioner is entitled to interval
tolling. Should the Court find that there was good cause for the delay in filing, the additional thirty days in

28 question would not significantly impact the Court's analysis.

1   light of the justifications provided by Petitioner. See Noble v. Adams, 676 F.3d 1180,

2   1184 (9th Cir. 2012) ("Thus, [petitioner]'s delay of four and a half months may be within

3   the range of reasonableness if his explanation for the delay is adequate under California

4   law.").

5       Respondent presents several arguments as to why the explanation provided by

6   Petitioner's counsel was not a sufficient justification to show that the delay was

7   reasonable. First, Respondent notes that Hersek took over Petitioner's case over a year

8   before Petitioner's Court of Appeal decision was denied and "had plenty of time to

9   prepare for the possibility that the order would be adverse." (Opp'n at 6.) Along the same

10  lines, Respondent argues that after Hersek became counsel of record, the California

11  Court of Appeal issued an order to show cause, and that Hersek should have reviewed

12  the relevant record in preparing his response to the order to show cause. (Id.)

13  Respondent asserts that Hersek's failure to review the record during the pendency of the

14  California Court of Appeal petition "is what caused a nearly-four-month delay in re-filing"

15  a "nearly identical" petition in the next higher court. (Id. at 6-7.)

16      In comparing Petitioner's habeas petitions filed with California Court of Appeal

17  and California Supreme Court, it is apparent that while presenting the same claims,

18  significant substantive additions were made in the Supreme Court petition.[3] (See Reply,

19  Exs. F-G, ECF Nos. 26-2, 26-3.) Both petitions contain two claims: (1) that the

20  prosecution's failure to provide favorable evidence violated Petitioner's constitutional

21  rights, and (2) that the use of false evidence likewise violated his rights. (Id.) Whereas

22  Petitioner's appellate petition was 57 pages long, Petitioner's Supreme Court petition

23  was 98 pages long. (Id.)

24      The appellate decision includes a factual description of the evidence discovered

25  in the evidentiary hearing held regarding such issues. (See Ex. G at 17-25.) Further, in

26  the discussion of the merits of the claims in the appellate petition, Petitioner includes a

27
28      [3] The California Court of Appeal and California Supreme Court petitions shall hereafter be referred to as the "appellate petition" and "Supreme Court petition," respectively.

1   detailed discussion of the evidence discovered at the evidentiary hearing, including

2   undisclosed probation, jail and other records reflecting the alleged favorable treatment of

3   the key witness which evidence was not provided to Petitioner at trial. (Id. at 37-50.) The

4   Supreme Court petition elaborates upon and provides more factual detail regarding

5   Petitioner's claims. Where the appellate petition describes why the California Superior

6   Court decision denying the writ was incorrect in seven pages, the Supreme Court

7   petition includes twenty-two pages of analysis as to why the Superior Court and Court of

8   Appeal decisions were wrongly decided. (See Ex. F at 51-57, Ex. G at 75-97.)

9        It is without question that Hersek spent significant time preparing Petitioner's

10  Supreme Court petition. The Court recognizes that the case is complex in nature, and

11  that there are many relevant facts that Petitioner desired to place before the state court

12  to present his claims regarding the prosecution withholding evidence and presenting

13  false evidence at trial. Furthermore, the Court finds unpersuasive Respondent's

14  argument that Petitioner's counsel should have prepared for adverse decision from the

15  Court of Appeal prior to its issuance. As Hersek has explained in his declaration, and

16  would be true of nearly any attorney, the rigors and demands of the legal profession

17  rarely allows for time to work on matters not presently pending and due. While Hersek

18  did not specifically discuss his time commitments prior to the issuance of the denial of

19  the Court of Appeal decision, it defies reason to believe that Hersek did not have more

20  pressing deadlines in other matters that would have taken precedence. Hersek's failure

21  to work on Petitioner's Supreme Court petition prior to the issuance of the denial of the

22  appellate petition shall not be considered as a lack of diligence on behalf of Petitioner.

23       However, as Respondent contends, Hersek was assigned to the matter for over a

24  year prior to the appellate court decision and should have had a sufficient level of

25  familiarity with the case at the time he drafted the Supreme Court petition. On December

26  16, 2009, Hersek filed a traverse to Respondent's return to the order to show cause with

27  regard to the appellate petition. (See Pet., Ex. FF.) The traverse and memorandum of

28  points and authorities in support of the traverse was over forty pages long, and

1  discussed the same issues regarding <u>Brady</u> violations and the presentation of false

2  evidence at issue in Petitioner's Supreme Court petition. (<u>Id.</u>) Accordingly, it is without

3  question that Hersek had previously addressed the relevant issues prior to the filing of

4  the Supreme Court petition.

5  　　　　It appears that Coangelo, until his death, served Petitioner competently as

6  counsel and after an evidentiary hearing in Stanislaus County Superior Court, drafted

7  and filed a lengthy habeas petition incorporating the new evidence discovered through

8  the evidentiary hearing with the California Court of Appeal. Based on the contents of the

9  petition, the Court of Appeal required the state to respond and show cause why the

10 petition should not be granted. (<u>See</u>, Pet., Ex. EE.) Regardless, Petitioner's counsel felt

11 it necessary to elaborate upon the factual assertions and arguments made in the

12 appellate petition in the Supreme Court petition. It is open to debate whether such

13 additional work was necessary or beneficial to Petitioner. The factual contentions and

14 legal arguments were set forth in the appellate decision, and nothing in the denial of the

15 petition indicate that Petitioner failed to set forth sufficient facts; it appears that the

16 California Court of Appeal denied the Petition based on its determination of the facts

17 presented before it. Accordingly, it is unclear whether thirty pages of additional factual

18 contentions and arguments based on the same claims would prove beneficial when

19 presented in Petitioner's Supreme Court petition.

20 　　　　However, it is not the province of this Court to determine whether the strategy of

21 appellate counsel was reasonable. Facially, Petitioner's counsel has provided the Court

22 with legitimate reasons why it took counsel additional time after the denial of the

23 appellate petition to file the Supreme Court petition. It is also without question that

24 counsel spent significant time to prepare the Supreme Court petition, notwithstanding

25 that much of the information and arguments were previously presented in the appellate

26 court petition. Other courts, when presented with similar facts have found that

27 justification for delay, in the form of substantial revisions to a petition, reasonable and

28 entitled to interval tolling. See <u>Osumi v. Giurbino</u>, 445 F. Supp. 2d 1152, 1158-1159

1   (C.D. Cal. 2006) ("Here, there was a three month or 96-day interval between the

2   Superior Court's decision and petitioner filing his habeas corpus petition in the California

3   Court of Appeal, and, similarly, a three month or 98-day interval between the California

4   Court of Appeal's decision and petitioner filing his habeas corpus petition in the

5   California Supreme Court. These delays are not unreasonable given the lengthy briefs

6   petitioner filed in the California appellate courts and petitioner's substantial rewriting of

7   his habeas corpus petition following the denial of that petition by the Los Angeles County

8   Superior Court."); see also Stowers v. Evans, 2006 U.S. Dist. LEXIS 13863, 2006 WL

9   829140 (E.D.Cal. 2006) (87-day delay not unreasonable because second petition was

10  substantially re-written); Warburton v. Walker, 548 F.Supp.2d 835, 840 (C.D. Cal. 2008)

11  (69-day delay reasonable because petitioner amended petition before filing in Court of

12  Appeal); Tidwell v. Knipp, 2013 U.S. Dist. LEXIS 56555, 11-12 (E.D. Cal. Apr. 17, 2013)

13  (Magistrate Judge Delaney revised findings and recommendation to find a 77-day delay

14  reasonable because the petition was "not identical to the previously-filed petition. It is

15  longer, addresses the superior court's decision, and includes additional record and legal

16  cites.").

17          Hersek, as the appointed state public defender since 2004, is well versed in

18  California criminal appeal practice. There is no evidence that during Hersek's

19  representation of Petitioner that Hersek deviated from his duty to zealously advocate in

20  Petitioner's favor and attempt to present Petitioner's claims in the best light possible to

21  the state courts. Acting under the premise that California does not have strict time

22  requirements with regard to habeas petitions, Hersek took additional time to prepare the

23  Supreme Court petition, and included in the petition a description how there was not

24  substantial delay in filing the petition. Based on the justifications provided by counsel,

25  the significant revisions made to the petition, and the fact the petition was filed within a

26  relatively short period of time, no more than sixty days after the objectively reasonable

27  period of time to file the petition, the Court finds that Petitioner filed his Supreme Court

28  petition within a reasonable period of time and is entitled to tolling for the period between

1   petitions. See Pace v. DiGuglielmo, 544 U.S. 408; Chavis, 546 U.S. 189.

2   The reasonable time standard for filing habeas corpus petitions in California is

3   amorphous.   Without more guidance from the California courts it is reasonable to

4   conclude that the 120 day period, along with the explanations form counsel for any

5   delay, was reasonable. See Carey, 536 U.S. at 223 (The fact that California's timeliness

6   standard is general rather than precise may make it more difficult for federal courts to

7   determine just when a review application (i.e., a filing in a higher court) comes too late.").

8   Petitioner is therefore entitled to tolling during the pendency of his state habeas

9   petitions. Accordingly, the statute of limitations began to run on November 27, 2007, the

10  date Petitioner's direct appeals were considered final. As Petitioner had a habeas

11  petition currently pending at that time, he is entitled to tolling until the denial of his

12  California Supreme Court petition on October 12, 2011. As 364 days of the limitations

13  period expired prior to the filing of the instant petition on October 10, 2012, the petition

14  was timely filed within the one year limitations period. It is recommended that

15  Respondent's motion to dismiss based on AEDPA's one year statute of limitation be

16  denied.

17  **III.   CONCLUSION AND RECOMMENDATION**

18  Therefore it is RECOMMENDED that the motion to dismiss this action as time-

19  barred be DENIED.

20  These findings and recommendations are submitted to the United States District

21  Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636

22  (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court,

23  Eastern District of California. Within thirty (30) days after being served with a copy, any

24  party may file written objections with the Court and serve a copy on all parties. Such a

25  document should be captioned "Objections to Magistrate Judge's Findings and

26  Recommendations." Replies to the objections shall be served and filed within fourteen

27  (14) days (plus three days if served by mail) after service of the objections. The Court

28  will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c). The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   August 15, 2013          /s/ *Michael J. Seng*
                                 UNITED STATES MAGISTRATE JUDGE