UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS CIANEZ HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>GREG LEWIS, WARDEN,<br><br>Respondent. | No.  No. 1:12-cv-01661-DAD-JDP (HC)<br><br>ORDER ADOPTING AMENDED FINDINGS AND RECOMMENDATIONS AND GRANTING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. No. 88) |

Petitioner Jesus Cianez Hernandez is a state prisoner proceeding through appointed counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**PROCEDURAL HISTORY**

This federal habeas action has a somewhat unusual procedural history before this court.[1]  Following the filing of the petition, the answer, and the traverse (Doc. Nos. 1, 58, 67), on

---

[1] The procedural history of the state court proceedings in this case (which included the California Supreme Court's affirmance in part, reversal in part, and vacating in part of the original judgment and the holding of an evidentiary hearing in the Stanislaus County Superior Court after the California Supreme Court's subsequent issuance of an order to show cause why relief should not be granted as to petitioner's supplemental petition for state habeas relief) is thoroughly summarized in the amended findings and recommendations.  (Doc. No. 88 at 2–3.)

1

December 7, 2016, the then–assigned magistrate judge issued findings and recommendations recommending that: (1) the petition for a writ of habeas corpus be granted; (2) petitioner's convictions for murder for financial gain in violation of California Penal Code (hereinafter "Penal Code") §§ 187, 190.2(a)(1)) and conspiracy to commit murder (Penal Code § 182) be vacated; and (3) petitioner be ordered released unless the state of California gave notice within ninety (90) days of the adoption of the findings and recommendations of its intention to retry him. (Doc. No. 72 at 74–75.)[2] Those findings and recommendations were served on both parties with notice that any objections thereto must be filed within thirty (30) days. Petitioner filed a response on January 4, 2017, suggesting that minor typographical errors in the findings and recommendations be corrected. (Doc. No. 73.) Respondent filed no objections to those findings and recommendations.

Nonetheless, on July 11, 2017, the undersigned issued an order referring the matter back to the then–assigned magistrate judge for further consideration of the deference due, if any, to the state court's factual findings and for the issuance of amended findings and recommendations addressing and clarifying that issue. (Doc. No. 74 at 6.) Specifically, the undersigned noted that it appeared the initial findings and recommendations reviewed both the legal standards employed and the factual findings made by the state courts in addressing petitioner's *Napue* claim under a *de novo* standard of review. (Id. at 2-5.) Accordingly, the undersigned referred the matter back to the then–assigned magistrate judge to address the appropriate standard of review to be applied under these circumstances to factual determinations made by the state court—such as whether a

/////

---

[2] The original findings and recommendations concluded that the state court had applied an incorrect legal standard in assessing prejudice with respect to petitioner's claims that were based on the Supreme Court's decision in *Napue v. Illinois*, 360 U.S. 264 (1959), and its progeny. (Doc. No. 72 at 46–51.) Specifically, the magistrate judge concluded that the state court had erred in applying the legal standard for prejudice applicable under *Brady v. Maryland*, 373 U.S. 83 (1963) to the *Napue* claims and concluded that because applying that legal standard to petitioner's *Napue* claims was contrary to clearly established federal law, this federal habeas court was required to rule on petitioner's *Napue* claim "without the deference [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] otherwise requires." (Doc. No. 72 at 51) (quoting *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010)).

witness testified falsely at trial—and for application of the appropriate level of deference to those factual findings. (*Id.* at 5–6.)

On April 18, 2018, the magistrate judge issued amended findings and recommendations which are now pending before the court. (Doc. No. 88.) The amended findings and recommendations clarified that a deferential standard of review applied where the state court had made factual determinations, then gave deference to the state court's factual findings where appropriate, and again concluded that the state court had erred in applying the incorrect legal standard in assessing the prejudice to petitioner flowing from the *Napue* violation. Having clarified the analysis, the amended findings and recommendations again recommended that the petition for a writ of habeas corpus be granted. (*Id.* at 52–54, 76.) The amended findings and recommendations were served on both parties with notice that any objections thereto must be filed within thirty (30) days. (*Id.* at 77.) On May 8, 2018, respondent timely filed objections to the amended findings and recommendations.[3] (Doc. No. 90.) On May 21, 2018, petitioner timely filed a reply to respondent's objections. (Doc. No. 91.)

**DISCUSSION**

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, the court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, including the amended findings and recommendations, respondent's objections thereto, and petitioner's reply, the court finds the amended findings and recommendations to be supported by the record and proper analysis.

The amended findings and recommendations address three grounds for federal habeas relief asserted by petitioner: (1) that the prosecution failed to disclose evidence favorable to petitioner at trial, in violation of the Supreme Court's decision in *Brady*; (2) that petitioner's conviction was obtained through the prosecution's introduction of false testimony at petitioner's trial, in violation of the principles announced by the Supreme Court in *Napue*; and (3) the

/////

---

[3] As noted above, respondent did not object to the original findings and recommendations.

3

cumulative effect of the *Brady* and *Napue* violations entitled petitioner to federal habeas relief. (Doc. No. 88 at 4, 14, 45.)

Neither party has objected to the magistrate judge's finding that the state court's decisions rejecting petitioner's *Brady* claims were not unreasonable. (*See* Doc. No. 88 at 30–34, 36–38, 40–45.) Similarly, neither party has objected to the magistrate judge's finding that, if federal habeas relief is appropriate as to petitioner's *Napue* claims, the court need not address the cumulative effect of the alleged *Brady* and *Napue* violations. (*See id.* at 75.) In addition, neither party has objected to the amended findings and recommendations' conclusion with respect to one of petitioner's *Napue* claims—wherein petitioner contends that district attorney investigator Alan Fontes and a deputy district attorney testified falsely about prosecution witness Anthony Ybarra serving his full sentence for a theft conviction—that the state court's factual determination that prosecution witness Ybarra served the full sentence imposed upon him was reasonable. (Doc. No. 88 at 67.)

In the end, however, the amended findings and recommendations conclude that "there is a reasonable likelihood that the cumulative effect" of the false testimony that was presented by the prosecution at petitioner's trial regarding monetary benefits given to Ybarra and his activities as an informant "could have affected the judgment of the jury." (*Id.* at 74, 54–64.) In this regard, the magistrate judge found that, "[h]ad Ybarra and Fontes testified truthfully at trial, the jury would have heard evidence that made Ybarra appear less credible." (*Id.* at 74–75.) It is this conclusion and the recommendation that is based upon it to which respondent has objected. Respondent raises the following five objections to the amended findings and recommendations: (1) federal habeas relief is barred because the state court's decision was reasonable on the law and the facts (Doc. No. 90 at 6–7); (2) federal habeas relief is barred because this court must defer to the state court's factual findings pursuant to 28 U.S.C. § 2254(e), unless rebutted by clear and convincing evidence presented for the first time in federal court, and no new evidence has been presented to this court (*id.* at 7–8, 11–12); (3) "there is at best only mere possible, or imaginary, or speculative doubt that the jury verdict would have been the same" (*id.* at 9) (internal quotation marks and citation omitted); (4) Ybarra's testimony that he witnessed petitioner plotting to

4

1  murder Esther Alvarado with Alfredo Padilla and Brenda Prado is credible (*id.* at 10, 17–20); and
2  (5) Ybarra did not testify falsely at trial regarding his history as an informant and the benefits he
3  received from the prosecution for testifying against petitioner (*id.* at 12–17).

### I. The State Court's Adjudication of Petitioner's *Napue* Claims Was Contrary To or an Unreasonable Application of Federal Law

To succeed on a *Napue* false testimony claim, a petitioner must prove that "(1) the testimony was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material." *Dow v. Virga*, 729 F.3d 1041, 1048 (9th Cir. 2013); *see also Sanders v. Cullen*, 873 F.3d 778, 794 (9th Cir. 2017). In relation to the materiality requirement, "[c]learly established Supreme Court precedent holds that knowingly presenting false testimony to a fact-finder necessitates reversal of a conviction if 'the false testimony *could* . . . in any reasonable likelihood have affected the judgment of the jury.'" (Doc. No. 88 at 46) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)) (emphasis added).

As discussed in the pending amended findings and recommendations and evidenced by review of the California Court of Appeal's decision rejecting petitioner's *Napue* claims, the state court applied a more demanding standard in addressing those claims than that articulated by the Supreme Court. (Doc. Nos. 88 at 48; 1-7 at 102.) While the state appellate court acknowledged that materiality under *Napue* requires only a showing that the false testimony *could* have affected the outcome, it nonetheless inappropriately applied the much more stringent harmless error standard, and thereby required a showing of a reasonable probability that the false testimony *would* have affected the outcome of the trial. *See Dow*, 729 F.3d at 1048 ("It is clear from the state court's opinion, however, that it applied a state law standard for harmless error review that is more difficult for the defendant to meet than the standard prescribed by the Supreme Court.").

That the state appellate court erred in applying an incorrect legal standard is also evident from both that court's imprecise articulation of that standard but also from its analysis erroneously rejecting petitioner's *Napue* claims. (*See* Doc. No. 1-7 at 106–07) (suggesting that petitioner was required to establish that false testimony presented at his trial regarding both undisclosed monetary benefits to prosecution witness Ybarra as well as regarding Ybarra's

history as an informant did change the outcome of petitioner's trial.)  Respondent's objections to the amended findings and recommendations based on the contention that the state court's "ruling was reasonable" on the law (Doc. No. 90 at 6–7), or that "there is at best only mere possible, or imaginary, or speculative doubt that the jury verdict would have been the same" (*id.* at 9), are therefore unpersuasive.

Similarly, respondent's objections based upon the Supreme Court's decisions in *United States v. Bagley*, 473 U.S. 667 (1985) and *Chapman v. California*, 386 U.S. 18 (1967) are also misplaced.  The decisions in those cases do not stand for the proposition that *Napue* violations are subject to the more stringent harmless error standard; rather, in *Bagley* and *Chapman* the Court merely restated the *Napue* materiality standard from the perspective of the government: acknowledging that the government must establish beyond a reasonable doubt that the use of false testimony would not have affected the judgment of the jury.  Consideration of those decisions, therefore, does not call into question the correctness of the magistrate judge's finding that the state court's adjudication of petitioner's *Napue* claims resulted in a decision that was contrary to clearly established federal law.

**II.     The Magistrate Judge Correctly Concluded that Habeas Relief is Warranted**

As noted above, the undersigned referred this matter back to the then–assigned magistrate judge for clarification of the standard of review to be employed in considering the state court's factual findings once it is determined that the state court decision was contrary to clearly established federal law.  (Doc. No. 74 at 6.)  The amended findings and recommendations thoroughly addressed this issue and acknowledged the appropriate deference that is to be accorded to the state court factual findings.  (Doc. No. 88 at 52-68.)  However, and most importantly, the amended findings and recommendations recommend the granting of federal habeas relief based on petitioner's *Napue* claims upon which the state court did not render any factual findings.  No presumption of correctness can apply when there are no state court factual findings for a federal court to apply that presumption to.  *Taylor v. Maddox*, 366 F.3d 992, 1000–01 (9th Cir. 2004) ("No doubt the simplest is the situation where the state court should have made a finding of fact but neglected to do so.  In that situation, the state-court factual determination is

6

perforce unreasonable and there is nothing to which the presumption of correctness can attach."), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014); *see also Jones v. Harrington*, 829 F.3d 1128, 1136 (9th Cir. 2016) "([W]here the state court makes factual findings 'under a misapprehension as to the correct legal standard,' 'the resulting factual determination will be unreasonable and no presumption of correctness can attach to it.'") (quoting *Taylor*, 366 F.3d at 1001).

As to the two *Napue* violations at the heart of the magistrate judge's recommendation that habeas relief be granted, the state court assumed both that the trial testimony in question was false and that the prosecutor knew it was false, but nonetheless concluded that the false testimony was not material. Having determined that the state court applied an incorrect materiality standard and did not make factual findings to which a presumption of correctness could attach, the magistrate judge properly reviewed petitioner's claims as to those two alleged *Napue* violations *de novo*. Because the level of deference owed to the state court's factual findings is irrelevant to the pending amended findings and recommendations, so too are respondent's objections that a federal habeas court must defer to the state court's factual findings under § 2254(e) or that petitioner must provide new evidence to the federal habeas court which rebuts the state court's factual determinations. (Doc. No. 90 at 7.) Here, there were simply no material state court factual findings to either defer to or to rebut.

    1.    <u>First *Napue* Claim: False Testimony Regarding Monetary Benefits to Ybarra</u>

Petitioner claims that district attorney investigator Fontes testified falsely at petitioner's trial that prosecution witness Ybarra was not provided any compensation prior to being placed in the witness protection program in July of 1989. (Doc. No. 88 at 55.) The amended findings and recommendations correctly concluded that the state court did not render any factual findings with respect to this claim. (*See* Doc. No. 1-7 at 105–06.) Rather, the state appellate court assumed the trial testimony was false but concluded that it was not material. [4]

---

[4] Even if the state court had made a factual finding that the trial testimony regarding monetary benefits was not false, such would have been an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2). "[T]he question on review is whether an appellate panel, applying the normal standards of appellate

7

Respondent does not contend that the state court made a factual finding as to whether Fontes' trial testimony was false, but instead argues that the state court "left open only the factual issue [of] whether Ybarra received $310, for witness expenses, in addition to the about $7,000 the jury knew he received." (Doc. No. 90 at 11.) Respondent appears to be arguing in its objections that, even under the correct *Napue* materiality standard, it is not reasonably likely that disclosure of an additional $310 paid by Fontes to Ybarra could have affected the jury's verdict. The argument is not persuasive, in part because it is based on the unsupported contention that the scope of the undisclosed payments to Ybarra was limited to $310. As noted, the state court did not make a factual finding as to whether the trial testimony regarding benefits provided to witness Ybarra was false. Accordingly, the magistrate judge properly analyzed the trial and evidentiary hearing testimony in its entirety. In doing so, the magistrate judge properly found that Ybarra and Fontes testified falsely at petitioner's trial not only about the additional amount of money that Ybarra was paid, but also about: (1) when Fontes provided Ybarra with monetary benefits (Doc. No. 88 at 55–58); (2) whether Ybarra expected compensation or leniency in exchange for his

---

review, could reasonably conclude that the finding is supported by the record." *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004); *see also Taylor*, 366 F.3d at 999. This court has reviewed both the trial and evidentiary hearing testimony of witnesses Fontes and Ybarra and concludes that the record fails to reasonably support a finding that their testimony at petitioner's trial was truthful. As the amended findings and recommendations note, at trial Fontes testified that Ybarra did not participate in the witness protection program before June of 1989 and did not receive any money either directly or indirectly before then. (Doc. No. 88 at 55–56.) However, at the evidentiary hearing in state court held seventeen years later, Fontes admitted that he provided cash payments to Ybarra in 1988 that were unrelated to his participation in the witness protection program. (*Id.* at 56–58.) Similarly, Ybarra testified at the evidentiary hearing that Fontes provided him money prior to his entering the witness protection program to "help [him] out." (*Id.* at 59.) The record also includes internal memoranda from the prosecutor's office which "clearly indicate that Ybarra had both requested and expected monetary payments prior to testifying, and that Fontes thought it best to provide Ybarra money to make sure that he would testify." (*Id.*) Respondent now argues that even if § 2254(d) is satisfied a federal habeas court must defer to the state court's factual findings under § 2254(e). (Doc. No. 90 at 7.) Accepting respondent's argument, however, would render § 2254(d)(2) a nullity, for it would require a federal court to apply a presumption of correctness to a finding that it has already determined to be unreasonable. *See, e.g.*, *Torres v. Prunty*, 223 F.3d 1103, 1110 n.6 (9th Cir. 2000) ("In deciding, as we have, that the state courts' factual determinations were unreasonable within the meaning of § 2254(d)(2), we have decided, of necessity, that on the existing record Torres has rebutted the 'presumption of correctness' of those findings 'by clear and convincing evidence.' *See* § 2254(e)(1).").

8

testimony (*id.* at 58–59); and (3) whether Ybarra was ever provided with cash payments directly (*id.* at 55–58).  The magistrate judge also correctly concluded that, "[b]ased on the evidence now before the Court, there is no question but that the testimony the prosecution presented about Ybarra's receipt of monetary benefits was false."  (*Id.* at 59.)

Therefore, to the extent petitioner's *Napue* claim is based on the alleged false trial testimony of witnesses Ybarra and Fontes regarding monetary benefits provided to prosecution witness Ybarra, petitioner has satisfied the first requirement with respect to that claim by establishing the challenged trial testimony was actually false.

The magistrate judge also properly concluded that "[t]he prosecution should have known—and, in the Court's view, had to have known—that the testimony provided by Fontes regarding Ybarra's receipt of undisclosed monetary benefits was false."  (*Id.* at 60.)  This is because Fontes was employed by the district attorney's office, the payments to Ybarra were made by that office, and Fontes' requests for those payments were well documented in an internal office memoranda.  (*Id.*)  Notably, respondent does not object to this finding.  Petitioner therefore has satisfied the second element of his *Napue* claim based on Ybarra and Fontes' false trial testimony regarding monetary benefits by establishing that the prosecution knew the trial testimony it presented was false.[5]

    2.    <u>Second Napue Claim:  False Testimony Regarding Ybarra's Informant History</u>

Petitioner also asserts that prosecution witness Ybarra testified falsely at trial regarding his informant activities in 1981 and 1988.  (Doc. No. 88 at 61.)  At petitioner's trial, Ybarra testified that after Ms. Alvarado was murdered in 1988 and after he was arrested for petty theft, he did not work as an informant for the police.  (*Id.*)  On cross-examination, Ybarra testified that he became an informant in 1984.  (*Id.* at 62.)  Ybarra denied that he asked for assistance relating

---

[5] The final element of a *Napue* claim—whether the false testimony was material—is properly analyzed after it is determined whether the testimony was false and whether the prosecution knew so.  Here, the court will evaluate materiality after addressing whether testimony regarding Ybarra's informant history was false and whether prosecution knew that to be the case.  *See Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008) (Because each additional *Napue* and *Brady* violation further undermines our confidence in the jury's decision, we analyze the errors 'collectively.'").

to the theft of a lawnmower that occurred on the same day as the murder. (*Id.*) At the evidentiary hearing in state court conducted seventeen years later in connection with petitioner's collateral challenge to his conviction, however, Ybarra testified that he had actually worked as an informant in 1981, 1982, and 1988. (*Id.*) As to those activities in 1988, Ybarra testified that he became an informant after he had come forward with information in petitioner's case, and that he carried out drug deals for the police in exchange for leniency for his brother, who had been arrested in connection with the stolen lawnmower. (*Id.*)

The amended findings and recommendations concluded that the state court did not make a factual finding as to whether Ybarra testified falsely at petitioner's trial about his activities as an informant in 1988 and his effort to obtain leniency for his brother at that time.[6] (*Id.* at 64.) As the amended findings and recommendations appropriately concluded, "[i]t is without question that Ybarra testified falsely at trial when he stated that he did not, at any time, 'ask them to give you any help with any lawn mower caper or anything else.'" (*Id.* at 63.) Petitioner has therefore established the first element with respect to his *Napue* claim based on Ybarra's trial testimony regarding his activities in 1988 as an informant because he has established that Ybarra's trial testimony in this regard was false.

The amended findings and recommendations do not reflect an explicit finding that the prosecution knew or should have known that Ybarra's trial testimony regarding his informant activities in 1988 was false.[7] Nevertheless, the undersigned has conducted a *de novo* review of the record and now finds that the prosecution knew or should have known that Ybarra's trial testimony was false in this regard as well. *See Amado v. Gonzalez*, 758 F.3d 1119, 1134 (9th Cir.

---

[6] The amended findings and recommendations determined that the state court found only that Ybarra did not lie about his informant activities prior to 1984 because he was questioned at trial only as to his informant activities in 1984. (Id.) The magistrate judge concluded that this state court finding withstood scrutiny under 28 U.S.C. §§ 2254(d)(2) and (e)(1) because it was not unreasonable in light of the evidence before the state court and because the presumption of correctness afforded to the state court's factual finding has not been overcome by clear and convincing evidence. (Id. at 63–64.) Neither party objects to this finding and the court adopts it.

[7] It is clear from the analysis set forth in the findings and recommendations, however, that the magistrate judge so found.

10

2014) (Holding in the *Brady* context that "[b]ecause the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned.") (quoting *Carriger v. Stewart,* 132 F.3d 463, 480 (9th Cir.1997) (en banc)). Here, as in *Amado*, the prosecution was in the unique position to obtain information known to other law enforcement agents regarding Ybarra's activities as an informant in 1988 and any subsequent leniency that he may have obtained for his brother. In other words, the prosecution should have known that Ybarra was working as an informant on behalf of the district attorney's office in 1988 after Ms. Alvarado's murder and that he did so to obtain leniency for his brother. The court therefore finds that petitioner has also established the second element (that the prosecution new or should have known the testimony it presented was false) of his *Napue* claim based on Ybarra's false trial testimony regarding his informant activities in 1988.

         3.      <u>The False Trial Testimony Was Material</u>

In his objections, respondent argues that Ybarra credibly testified at petitioner's trial that he overheard petitioner plotting with Padilla and Prado to murder Ms. Alvarado. (Doc. No. 90 at 9–11.) Respondent argues that the jurors at petitioner's trial apparently found Ybarra to be a credible witness despite knowing that he received roughly $7,000 in benefits for his cooperation, that he was an informant, and that he was a drug addict, thief, and convicted felon. (*Id.* at 9.) Respondent also contends that Ybarra could not have lied about what he overheard because he told the police that Prado was present during the murder-for-hire plot, a fact that was later corroborated at trial. (*Id.* at 10.) Respondent's objections miss the mark.

The issue before this federal habeas court is not whether Ybarra's testimony was credible, or even whether the other evidence presented at trial implicated petitioner in the murder with which he was charged. Instead, the issue before this court is whether petitioner was denied due process by the prosecution's presentation of trial testimony that it knew or should have known to be false. *Reis-Campos v. Biter*, 832 F.3d 968, 976 (9th Cir. 2016), *cert. denied,* ___U.S.___, 137 S. Ct. 1447 (2017) ("The *Napue* materiality standard is less demanding than *Brady*. Under *Napue*, a conviction must be set aside whenever there is any reasonable likelihood that the false

testimony could have affected the judgment of the jury.") (internal quotation marks omitted); *Soto v. Ryan*, 760 F.3d 947, 958 (9th Cir. 2014) ("Under this materiality standard, [t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."). The Ninth Circuit's recent opinion in *Panah v. Chappell*, 935 F.3d 657 (9th Cir. 2019), *petition for cert. filed*, (U.S. Mar. 13, 2020) (No. 19-8009), is instructive. There, the Ninth Circuit affirmed a district court's denial of a petitioner's habeas petition, finding, in part, that trial testimony from an expert witness that was later determined to be false was not material to the petitioner's conviction for first-degree murder. *Id.* at 664. In particular, the court in *Panah* pointed out that, despite the expert's testimony, the case against the petitioner there "was devastating" because the victim's body was found in petitioner's closet, blood stains matching the victim's blood type were found on petitioner's robe, and petitioner's behavior in the immediate aftermath of the victim's disappearance was "highly suspicious." *Id.* at 664–65. Moreover, the court noted that the expert's testimony "offered the jury, at most, hypotheticals and wavering findings," and that "[t]he State even acknowledged th[at] weakness in [the expert's] findings in closing argument." *Id.* at 665. In other words, the Ninth Circuit, in affirming the district court's denial of the petitioner's application for federal habeas relief, found that "the state court could reasonably rely on an abundance of other evidence to still have confidence in the conviction" because the expert's testimony was not "critical" in convicting the petitioner and because "the State's case was still devastating and largely unchallenged." *Id.* at 667.

The facts of the petition pending before this court, however, are markedly different from those confronted by the court in *Panah* because, here, Ybarra's testimony *was* critical to the prosecution's case against petitioner. In finding a reasonable likelihood that the false testimony regarding monetary payments made by police to prosecution witness Ybarra and his informant activities in 1988 *could* have affected the jury's verdict, the magistrate judge examined how the prosecution framed the evidence it had elicited at trial as well as whether the jury's interpretation of that evidence could have been different had the false testimony not been provided. (Doc. No. 88 at 68.) The amended findings and recommendations note that, in its closing argument to the

jury, the prosecution emphasized that: (1) there was no evidence that Ybarra testified or acted as an informant to receive benefits (*id.* at 68–69); (2) Ybarra did not seek out a deal and was not intelligent enough to do so (*id.* at 69–70); (3) the defense could only attempt to impeach Ybarra's testimony by pointing out his inability to remember factual details about the trailer in which, he claimed, petitioner had plotted the murder (*id.* at 70–71); and (4) Ybarra did not receive any benefits until after he was placed in the witness protection program, well over a year and a half after Ms. Alvarado's murder. As the magistrate judge notes, these arguments made to the jury by the prosecutor were based on the very trial testimony of witnesses Fontes and Ybarra that has now been found to be false. (*Id.* at 70, 72.) Moreover, as the amended findings and recommendations note, petitioner's strategy at his trial was to present an alibi defense and to argue that someone had framed him for the murder. (*Id.* at 7.) Petitioner presented evidence that he was at home at the time of the murder. He also presented trial testimony providing an alternate explanation for why Ms. Alvarado's fingerprints were found in petitioner's car (that she had often been a passenger in his car) and for why shotgun shells consistent with the bullet that was found in Ms. Alvarado's body were discovered in front of a home that petitioner had stayed at (a celebratory round was fired on New Year's).

Ybarra's trial testimony that he had overheard petitioner conspiring to murder Ms. Alvarado was therefore an important part of the prosecution's case against petitioner. Especially in light of the prosecution's closing argument to the jury at petitioner's trial, it is certainly possible that the jury was misled with respect to Ybarra's motivation to testify for monetary benefits and as to his credibility in general. As a result, there exists a reasonable likelihood that the false testimony could have affected the jury's verdict. *Giglio*, 405 U.S. at 153; *Napue*, 360 U.S. at 271; *Dow*, 729 F.3d at 1047-49. Petitioner is entitled to federal habeas relief under these circumstances.

## CONCLUSION

Accordingly,

1. The amended findings and recommendations issued on April 18, 2018 (Doc. No. 88) are adopted in full;

13

2. Petitioner's application for a writ of habeas corpus (Doc. No. 1) is granted; and

3. Respondent is ordered to release petitioner from custody within ninety (90) days of the date of this order unless the state of California notifies the court of its intent to retry petitioner in a timely fashion or unless this order is stayed.

IT IS SO ORDERED.

Dated: **May 6, 2020**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE